IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AIR PRODUCTS AND CHEMICALS, INC.<br>7201 Hamilton Boulevard<br>Allentown, PA  18195-1501,<br><br>      Plaintiff<br><br> v.<br><br>THE PROCTER & GAMBLE<br>MANUFACTURING COMPANY<br>Two Procter & Gamble Plaza<br>Cincinnati, OH 45202,<br><br>      Defendant. | CIVIL ACTION NO. |

### COMPLAINT FOR DAMAGES

Plaintiff Air Products and Chemicals, Inc. ("Air Products"), hereby files this Complaint against The Procter & Gamble Manufacturing Company ("P&G"), and avers as follows:

### NATURE OF THE ACTION

1. This is an action for breach of contract arising from P&G's refusal to defend Air Products in an underlying lawsuit as required by a Hydrogen Supply Agreement entered into by the parties on or about March 20, 2012, and subsequently amended on or about December 19, 2013 (the "Agreement").

### PARTIES

2. Air Products is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located at 7201 Hamilton Boulevard, Allentown, Pennsylvania.

3. Air Products is a worldwide supplier of industrial gases and equipment, specialty and intermediate chemicals, and environmental and energy systems.

4. P&G is a corporation incorporated under the laws of the State of Ohio, with its principal place of business located at Two Procter & Gamble Place, Cincinnati, Ohio.

5. P&G is a manufacturer of consumer goods specializing in cleaning agents and personal care products.

## JURISDICTION AND VENUE

6. This Court can exercise personal jurisdiction over P&G consistent with Pennsylvania law.

7. P&G is registered to do business in Pennsylvania with the Pennsylvania Department of State as entity number 2539629.

8. By registering to do business in Pennsylvania as a foreign corporation with the Pennsylvania Department of State, P&G has consented to personal jurisdiction in Pennsylvania.

9. On information and belief, P&G regularly transacts business in Pennsylvania.

10. P&G purposefully directed activities toward the Commonwealth of Pennsylvania, including negotiation of the Agreement.

11. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

12. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) in that P&G's registered office is located in this District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTS**

A. **The Agreement and P&G's Obligation to Defend Air Products**

13. On or about March 20, 2012, the parties entered into the Agreement, which was subsequently amended on or about December 19, 2013. A copy of the Agreement is attached hereto as Exhibit A.

14. Under the terms of the Agreement, Air Products agreed to sell and P&G agreed to purchase from Air Products its "entire purchase requirements of gaseous hydrogen (Hydrogen) for [P&G's] activities with respect to its hydrogen fueling activities for fuel cells for lift trucks (the "Designated Use") carried out at P&G's facility located at 3701 Monroe Highway 165 North, Pineville, LA 71360 . . . ."

15. As required by the Agreement, Air Products selected, installed, and maintains certain hydrogen fueling equipment (the "Equipment") at P&G's facility including, among other things, a compression, storage, and dispensing system. *See* Agreement at, *e.g.,* Section 3 and Attachment 2.

16. The Agreement requires P&G to pay a monthly rental and service charge for the Equipment. In addition, the Agreement requires P&G to limit use of the Equipment to P&G's properly-trained employees or invitees. *See* Agreement at Section 1(c) and Attachment 1.

17. Section 9 of the Agreement, headed "Limitation of Liability" contains two indemnity provisions.

18. Section 9(a) of the Agreement, headed "Duty to Warn; Indemnity" provides:

> Buyer acknowledges that there are hazards associated with the use of the Hydrogen, that it understands such hazards and that it is Buyer's responsibility to warn and protect its employees and others exposed to such hazards through Buyer's storage and use of Hydrogen.  Air Products shall provide Buyer with copies of

> material safety data sheets relating to the Hydrogen to help Buyer make such warnings, and Buyer assumes all risk and liability for any loss, damage or injury to persons or property of third persons not within an Indemnitor's Group (defined below) arising out of the presence or use of the Hydrogen and shall indemnify, defend and hold harmless Air Products from any such loss, damage, injury, cost and expense (including reasonable legal fees) related thereto.

19. Section 9(d) of the Agreement, headed "Indemnity of Buyer and Air Products" specifically covers claims arising from, *inter alia*, injury to P&G's employees, and provides:

> Each party (an "Indemnitor") shall defend, indemnify and hold harmless the other party (the "Indemnitee") for all claims, damages, expenses, losses, costs or liabilities, including without limitation reasonable legal costs, fees and expenses (collectively, "Losses"), arising out of (1) bodily injuries, including without limitation fatal injury or disease, to the Indemnitor's Group (as defined below) or (2) damage to tangible real or personal property of Indemnitor and Indemnitor's Group, in either case arising from or in connection with the performance of this Agreement. THE OBLIGATION TO INDEMNIFY, DEFEND AND HOLD HARMLESS SHALL APPLY WITHOUT REGARD TO FAULT OR CAUSE OF THE LOSSES, INCLUDING WITHOUT LIMITATION THE NEGLIGENCE OR STRICT LIABILITY OF THE INDEMNITEE. "Indemnitor's Group" shall mean: (i) collectively, with respect to Air Products, Air Products and its affiliates and subsidiaries, and any employee, officer, director or agent of any of the foregoing; and (ii) collectively with respect to Buyer, Buyer and its affiliates and subsidiaries, and any employee, officer, director, agent or invitee of any of the foregoing. (Emphasis in original).

20. Section 9(d) of the Agreement is a "knock for knock" indemnity provision in which each party assumed all risk arising from injury and/or death to its own employees and all risk of damage to its own property arising from or in connection with the performance of the Agreement.

21. The requirements of Section 9(d) expressly apply regardless of any alleged or actual negligence of the indemnitee.

22. Upon execution of the Agreement, Air Products supplied and installed the Equipment and began supplying, and P&G began purchasing, hydrogen pursuant to the agreement. Air Products has continued to perform its obligations under the Agreement, including maintaining the Equipment.

### B.  The Underlying Litigation and P&G's Refusal to Defend Air Products

23. On May 24, 2018, an incident occurred involving a hydrogen-powered forklift at the P&G plant in Pineville, Louisiana, resulting in the death of one P&G employee and alleged injuries to three additional P&G employees (the "May 24th Incident").

24. On July 3, 2018, Air Products and others received an e-mail from an attorney named Wesley Gralapp, purporting to provide "notice of the claims being made by Charles Bailey, Mikel Gray and Vernon Meeks," three P&G employees injured in the May 24th Incident. Mr. Gralapp wrote that he was not representing these individuals in workers compensation or tort claims against P&G.

25. On July 10, 2018, Air Products wrote to P&G and its parent company, The Procter & Gamble Company, providing notice that, pursuant to the Agreement, Air Products may look to P&G to indemnify, defend and hold harmless Air Products against all claims, liabilities, fees and expenses arising out of the May 24th Incident.

26. On July 18, 2018, P&G responded by letter to Air Products, claiming that "it is premature at this time given ongoing efforts to identify the root cause or causes of the incident to tender any claims relating to the incident for indemnification."

27. On August 28, 2018, a Petition for Damages was filed in the 9th Judicial District in the State of Louisiana, seeking damages stemming from death and injuries as a result of the May 24th Incident (the "Petition").  A copy of the Petition is attached hereto as Exhibit B. The Petition named Air Products as a defendant and alleged five causes of action against Air

5

Products.  The underlying case is captioned *Lott v. Plug Power, Inc. et al.*, Suit No. 262,832, Div. F, 9th Judicial District, State of Louisiana (the "Lott Matter").

28. The Petition alleges that on or about May 24, 2018, William Kendrick was working as an employee at the P&G facility in Pineville, Louisiana when the forklift he was operating exploded, causing fatal injuries to Mr. Kendrick and serious injuries to P&G employees Charles Bailey, Vernon Meeks, and Mikel Gray.

29. The Plaintiffs in the Petition are Messrs. Bailey, Meeks, Gray, their family members, and the family members of Mr. Kendrick.

30. All claims for damages in the Petition arise from the death of or injury to one or more P&G employee(s).

31. The Petition alleges five causes of action against Air Products, each of which is related to the hydrogen compression, storage, and dispensing Equipment at the P&G facility. The causes of action asserted against Air Products are: defect in Construction and/or Composition Under LA R.S. 9:2800.55, Design Defect Under LSA-R.S. 9:2800.56, Inadequate Warning Under LA R.S. 9:2800.57, Breach of Express Warranty Under LA R.S. 9:2800.58 and Negligence.

32. While the Petition does not specify an amount of damage that Plaintiffs are claiming, it is clear from the nature of the injuries alleged that the amount in controversy in the Lott Matter exceeds $75,000.

33. All the claims in the Petition against Air Products are claims "arising from or in connection with the performance of [the] Agreement."

34. On August 31, 2018, Air Products wrote to P&G, tendering the Lott Matter for P&G to indemnify, defend and hold harmless Air Products pursuant to the Agreement.

35. By letter dated September 6, 2018, P&G, through its outside counsel, declined Air Products' tender of indemnification and defense of the Lott Matter.

36. Because P&G refused to defend Air Products in the Lott Matter, Air Products had no choice but to retain defense counsel. To date Air Products has incurred over $41,000 in legal fees and costs, with additional fees for evidence handling and testing in excess of $10,000 expected shortly. Given the costs incurred to date and the serious nature of the Lott Matter, it is clear that the defense costs that Air Products will incur over the life of the Lott Matter will exceed $75,000.

37. On September 13, 2018, Air Products invoked the dispute resolution procedure of the Agreement. A copy of Air Products' letter of September 13, 2018 is attached hereto as Exhibit C. The parties complied with that procedure but were unable to resolve the dispute over indemnification and defense for the Lott Matter.

38. Air Products has met all conditions precedent under the Agreement to the filing of this action.

## COUNT ONE – BREACH OF CONTRACT

39. Air Products incorporates Paragraphs 1 through 38 of this Complaint herein by reference as if the same were fully set forth at length.

40. The Agreement is a valid and enforceable contract between the parties.

41. Under Section 9 of the Agreement, P&G is obligated to indemnify, defend and hold harmless Air Products against all claims, damages, expenses, losses, costs or liabilities, including without limitation reasonable legal costs, fees and expenses arising out of the Lott Matter.

42. On August 31, 2018, Air Products tendered the defense of the Lott Matter to P&G.

43. By refusing Air Products' tender of the defense of the Lott Matter, P&G breached its duty under Section 9 of the Agreement.

44. As a result of P&G's breach of the Agreement, Air Products was forced to retain defense counsel in the Lott Matter and to incur defense costs.

45. Air Products has performed and continues to perform its obligations as required under the Agreement.

46. As a proximate result of P&G's conduct, Air Products has suffered actual and consequential damages, including legal fees and costs all in an amount to be proven at trial.

**WHEREFORE**, Air Products respectfully requests that the Court:

a. Enter judgment in its favor and against P&G;

b. Award Air Products its actual and compensatory damages arising from P&G's breach of the Agreement in such amount as may be determined at trial, and;

c. Award such other and further relief as the Court deems just and proper.

Dated:  November 13, 2018						Respectfully submitted,


						  /s/ Gerald E. Burns
						Gerald E. Burns (PA ID No. 59466)
						Mark A. Kasten (PA ID No. 316387)
						BUCHANAN INGERSOLL & ROONEY PC
						50 South 16th Street, Suite 3200
						Philadelphia PA 19102-2555
						Telephone: (215) 665-8700
						Facsimile: (215) 665-8760
						*Attorneys for Plaintiff*